[Civ. No. 3876. Third Appellate District.—December 15, 1930.]

MAE KING, Respondent, v. RALPH W. EMERSON et al., Defendants; C. R. FAIRFIELD, Appellant.

[Civ. No. 3877. Third Appellate District.—December 15, 1930.]

MAE KING, Respondent, v. RALPH W. EMERSON, Appellant.

[Civ. No. 3878. Third Appellate District.—December 15, 1930.]

MAE KING, Respondent, v. RALPH W. EMERSON et al., Defendants; MONROE, LYON & MILLER, INC. (a Corporation), et al., Appellants.

Downey & Chester, J. Hampton Hoge, Len H. Honey, A. Dal Thomson and Irving D. Gibson for Appellants.

Dutton & Gilkey for Respondent.

MR. JUSTICE Pro Tem. TUTTLE Delivered the Opinion of the Court.—The appeal of defendant Fairfield is based upon the sole contention that the right of the guest in this case to recover for personal injuries received in an automobile collision was destroyed by section 141¾ of the California Vehicle Act of 1929 (Stats. 1929, p. 1580). In our original opinion, this point was decided adversely to this appellant. A rehearing was granted upon the showing that the question involved was pending before the Supreme Court. In the case of *Callet* v. *Alioto*, 210 Cal. 65 [290 Pac. 438], the Supreme Court definitely determined that this section is not retroactive, and this decision has become final. We therefore adopt the conclusion reached by this court in the original opinion.

As to the other appellants, after a further consideration of the case, we see no reason why the conclusion reached by the court in the original opinion should be disturbed, and it is therefore adopted as the opinion of the court upon this rehearing.

The order granting a new trial in respect to appellant Emerson is affirmed, and the judgment against appellants Fairfield, Monroe, Lyon and Miller, Inc., and W. B. Moyle is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 14, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 9, 1931.

The original opinion in this cause is as follows:

TUTTLE, J., *pro tem.*—This is an action brought to recover damages for personal injuries sustained by plaintiff

in a collision between two automobiles driven by defendants Ralph W. Emerson and C. R. Fairfield. Plaintiff was a guest in the automobile of defendant Fairfield. Defendants Monroe, Lyon & Miller, Inc., and W. B. Moyle are joined as defendants upon the theory that defendant Fairfield was their agent and employee.

The jury rendered a verdict in favor of plaintiff and against defendants C. R. Fairfield, W. B. Moyle and Monroe, Lyon & Miller, Inc., in the sum of $13,000. From this judgment there are two appeals, one by defendant Fairfield and one by defendant Monroe, Lyon & Miller, Inc., and defendant Moyle.

As to defendant Emerson a new trial was granted and from the order granting said motion said defendant also prosecutes an appeal.

As to defendant Fairfield, the only point raised by him is that the right of a guest to recover in this case was destroyed by section 141¾ of the California Vehicle Act of 1929 (Stats. 1929, p. 1580). The injury took place on August 10, 1927, and the trial was had September 25, 1928. It has been held that the foregoing section is not retroactive and, hence, it has no bearing upon this case. (*Krause* v. *Rarity*, (Cal. App.) 285 Pac. 879.)

Defendant Emerson contends that the court erred in granting a motion for new trial against him. The facts upon which this defendant recites may be briefly summarized as follows: A motion for new trial was made by this defendant upon all the statutory grounds. Thereafter the court caused to be entered the following minute order:

"Superior Court, Civil Record, County of Sacramento.
 "State of California.
 "Friday, November 23rd, A. D. 1928. Dept. 2.
"Court met pursuant to law.

 "Peter J. Shields,
 Judge,
 "Superior Court, presiding.

"Mae King,
"39127. vs.
"Ralph W. Emerson, et al.

"The motions for new trial of defendants had heretofore been submitted to the court and the court being fully

advised, orders that said motion for a new trial as to defendants Monroe, Lyon and Miller, C. R. Fairfield and W. Moyle be denied and that the motion for a new trial against defendant Ralph W. Emerson be and the same is hereby granted.''

Thereafter the following minute order was entered in the records of the court:

''Order for Correction of Order Granting Motion for New Trial as to Defendant Emerson and Directing that Same be Done Nunc Pro Tunc.

''It appearing from an inspection of the records in the above entitled court and cause that the order of this court heretofore given and made herein on November 23, 1928, and thereafter entered, wherein and whereby the motion of plaintiff for a new trial as against defendant Ralph W. Emerson was granted, was entered in such a way as not to correctly set forth the order of this court as then made in the premises, and that the records of this court herein should be corrected so as to conform to the facts and speak the truth.

''It is hereby ordered by the court upon its own motion that the minutes of this court herein be corrected to conform with the facts of the case and that the said minutes be amended to read as follows:

''The motion of plaintiff for a new trial as to defendant Ralph W. Emerson having been heretofore submitted to the court for decision, and the court having fully considered the same, it is ordered that said motion be and the same is hereby granted upon the ground of the insufficiency of the evidence to sustain the verdict in favor of the said Ralph W. Emerson, and that the motion of the said plaintiff for a new trial as to the said defendant Emerson is hereby granted accordingly.

''It is further ordered that said order be entered herein *nunc pro tunc* as of November 23, 1928.

''Done in open Court this —— day of December, 1928.

''Peter J. Shields,

''Judge of the Superior Court.

''(Endorsed): Filed, December 1st, 1928, Harry W. Hall, Clerk. By W. Hickey, Deputy.''

The notice of appeal states that said appeal is taken from the order of the court made November 23, 1928. This is the original order, first above set forth.

It is urged by this appellant that the trial judge was without jurisdiction to amend the said order granting a new trial. He concedes that the evidence is conflicting upon the issues raised by the pleadings, and admits that if the order, as corrected and amended, is allowed to stand, his appeal should be denied. It will be observed that the original order was corrected so that the motion was granted upon the ground of the insufficiency of the evidence.

Defendant Emerson moved the court to strike from the files the order granting a motion for new trial as amended and dated December 1, 1928. This motion was denied. The sole question upon this appeal is the power of the trial court to amend its order granting the motion for new trial.

██ It is elemental that all courts of record have the inherent power to correct their records so that they conform to the actual facts and speak the truth. (7 Cal. Jur., p. 613.) In the exercise of this power the court is not, however, authorized to do more than to make its records correspond to the actual facts, and cannot, under the form of an amendment to its records, correct a judicial error.

██ The amount and kind of evidence requisite to satisfy that court as to what was the real order of the court and what was the proper entry on the minutes must rest with the court and be decided upon the evidence adduced. In this connection, the judge may rely upon his own memory. The court is not precluded from correcting the entry because the "record" does not show that it is itself incorrect. The clerk is but an instrument and assistant of the court, whose duty it is to make a correct memorial of its orders and directions. The foregoing rules are laid down in the case of *Kaufman* v. *Shain*, 111 Cal. 16 [52 Am. St. Rep. 139, 43 Pac. 393]. In the latter case of *Harris* v. *Minnesota Inv. Co.*, 89 Cal. App. 396 [265 Pac. 306, 309], the rule is stated to be as follows:

"Independent of statutory provisions the court has power on its own motion to correct mistakes in its proceedings, and to annul within a reasonable time orders and judgments inadvertently made. (*Robson* v. *Superior Court*, 171

Cal. 588 [154 Pac. 8]; *People* v. *Curtis*, 113 Cal. 68 [45 Pac. 180].) Ruling and even judgments inadvertently made are not the result of judgment but of oversight, neglect or accident and are subject to correction by the court making them. (*Wiggin* v. *Superior Court*, 68 Cal. 398 [9 Pac. 646]; *Stewart* v. *Taylor*, 68 Cal. 5 [8 Pac. 605].)''

In the earlier case of *Wiggin* v. *Superior Court*, 68 Cal. 398 [9 Pac. 646, 648], the following language is used: ''But, independent, of statutory provisions, we are of opinion the court has power to correct mistakes in its proceedings, and to annul, within a reasonable time, orders and judgments inadvertently made. To illustrate, suppose a judgment is taken upon a default prematurely entered, or a judgment is inadvertently entered in favor of defendant, where it was intended to be in favor of plaintiff, or that for any one of a hundred reasons which might be supposed the court has accidentally or inadvertently entered orders or decrees not in consonance with its judgment or with law, and from which rank injustice must follow, can it be contended the court has no power, when within a day he discovers the mistake, to correct the error, and that the injured party must be remitted to an appeal for remedy? We think not.''

 When the motion of this appellant for new trial was presented and argued, the sole contention made by plaintiff was *that the evidence was insufficient to sustain the verdict*. The court thereupon announced from the bench that it would grant the motion, and the clerk entered a minute order to the effect that the motion was granted. Under these circumstances the court had the right to assume that the minute order would be entered by the clerk to the effect that the motion was granted upon the insufficiency of the evidence, that being the only point urged at the hearing. Upon discovering that the clerk had not made the proper entry, and that the minute order did not express the true ruling, the court had the power to correct its order. The act of the court in omitting to orally state the grounds for his ruling was an inadvertence under the authorities cited, and it cannot be said that the court, in correcting and amending its original order, was correcting a judicial error.

■ The act of the trial court questioned here cannot be held to have misled counsel for appellant. The affidavit of the trial judge stated, as we have said, that the sole ground urged by respondent in connection with her motion for new trial was the insufficiency of the evidence. This was the only question presented to the court for decision. When the trial judge inadvertently failed to specify that the motion was granted upon the insufficiency of the evidence, the oversight of the court must have been at once apparent to this appellant. And so when appellant descants upon the sanctity of orders made under these circumstances he assumes a rather anomalous position.

Defendants Monroe, Lyon & Miller, Inc., and W. B. Moyle appeal from the judgment. The two essential questions to be determined upon their appeal are as follows:

1. Was defendant Fairfield, at the time of the accident in question, the servant, agent, or employee of appellants Monroe, Lyon & Miller, Inc., and W. B. Moyle?

2. Was defendant Fairfield, at the time of the said accident, acting within the scope of his authority or within the course of his employment, as such servant, agent or employee?

Appellants contend that the evidence is insufficient to establish the foregoing facts, which, like any other facts in the case, are for the determination of the jury. ■ The verdict of the jury and their implied findings upon such questions will not be disturbed on appeal, where there is any substantial evidence to support them, and when conflicting inferences may reasonably be deduced from facts proved, those must be adopted which support the verdict. (*Estate of Shay*, 196 Cal. 355 [237 Pac. 1079].)

We will detail some of the salient facts of the case bearing upon the questions involved, and in doing so shall refer to evidence most favorable to respondent where a conflict is involved. At the time of the accident appellant Monroe, Lyon & Miller, Inc., was the owner of a tract of land in Santa Cruz County, known at Rio Del Mar. It had subdivided this tract and was placing the lots upon the market and attempting to sell them. Appellant W. B. Moyle held a license as a real estate broker and was selling said lots under a "brokerage" agreement with defendant corporation. Defendant Fairfield was engaged in selling said lots,

under an oral agreement with Moyle, under whom he held a salesman's license. Fairfield devoted his full time to the sale of this property. He was paid on a commission basis, and his territory was Sacramento and vicinity. It was his duty to search out prospects, submit their names to the local office at Sacramento, and if these names were approved to take such prospects to the property, where they were to be the guests of defendant corporation. Defendant Moyle was the general sales manager of Monroe, Lyon & Miller. Defendant Fairfield received orders and instructions as to the details of his work from both appellants. Fairfield also executed sales contracts on behalf of defendant corporation. On the day of the accident Fairfield had gone to Roseville to take respondent, her sister and daughter to Rio Del Mar in an attempt to sell the lots. For some reason they decided not to go to Santa Cruz that day. Fairfield testified that he took these parties as his guests to Sacramento. He testified that he took them as "prospects" and that he intended to "hold them as prospects" and to accommodate them with the ride for that purpose. There was also evidence that plaintiff was undecided when she entered the car whether or not she would go straight through to Santa Cruz or stop at Sacramento, through which they must pass on their way to the property. The names of both appellants were inscribed upon the entrance door of the Sacramento office.

It is appellants' contention that the evidence shows conclusively that Fairfield was not licensed to work for Monroe, Lyon & Miller; that he was performing no services for that corporation; that it had no control or supervision of the conduct of his work, and that it was not licensed as a broker-employing salesman, but was merely the contract owner of the property, and that if Fairfield was the employee of anybody it was William B. Moyle, whose name appears in the salesman license issued to Fairfield.

It is well settled that on plaintiff is the burden of proving that the relation of employer and employee existed at the very time of the alleged negligence. The relation of master and servant or employer and employee does not exist unless the relations of the parties are such that the master or employer may control the work of the servant or employee and direct the manner in which it shall be

done, and the master or employer must have control and direction, not only as to the employment, but of all of its details. In order to hold the master responsible for the negligence of a servant he must have the power of supervision of servant's conduct. Indeed, the words "master" and "servant" imply such power. (*Pilger* v. *City of Paris etc. Co.,* 86 Cal. App. 277, 280 [261 Pac. 328]; *Cotter* v. *Lindgren,* 106 Cal. 607 [46 Am. St. Rep. 255, 39 Pac. 950].)

It is conceded by appellants that Fairfield was working under the direction and control of Moyle, who, in turn, was working, under a written agreement, for Monroe, Miller & Lyon. Assuming that under the terms of said written agreement Moyle was an independent contractor, yet the corporation would still be liable for the negligence of Moyle, if it took charge of the details of the work performed by Moyle and Fairfield and exercised supervision and control over the work of said parties, although in a manner inconsistent with and contrary to the terms of said agreement. (*Luckie* v. *Diamond Coal Co.,* 41 Cal. App. 468 [183 Pac. 178]. Nor can appellants complain because in so acting they were violating the terms of the state Real Estate Brokers Act and it would have been unlawful for them to have directly employed Fairfield. An employer cannot claim immunity from liability for damages done to an innocent third party by his employee because the law in respect to such employment has not been complied with. He cannot be permitted to take advantage of his own illegal act. Such a contention is utterly untenable.

It is contended that Fairfield was not acting in the scope of any employment. We are satisfied that there was sufficient evidence to justify the jury in concluding that Fairfield, at the time of the injury, was acting in discharge of his duties. If a servant, employee or agent is engaged in business in which the master is interested, either directly or indirectly, it is the master's business, and he will be held liable. (*Kish* v. *California S. Automobile Assn.,* 190 Cal. 246 [212 Pac. 27].) Fairfield had gone to Roseville, at the direction of Moyle, to interview plaintiff and endeavor to sell her one of the lots. Plaintiff entered the automobile of Fairfield, and was being driven toward Sacramento when the injury occurred. Plaintiff was a "prospect", and Fair-

field was then and there engaged in his duties of a real estate salesman, acting under the control and directions of appellants. The foregoing are a few of the facts which the jury might have considered in this connection.

 If the jury concluded that Fairfield was combining his own business with that of his employers, the latter would still be responsible. The following language was used by the court in the case of *Ryan* v. *Farrell,* 208 Cal. 200 [280 Pac. 945, 946]: "It is the established rule in this jurisdiction that where the servant is combining his own business with that of his master, or attending to both at substantially the same time, no nice inquiry will be made as to which business the servant was actually engaged in when a third person was injured; but the master will be held responsible, unless it clearly appears that the servant could not have been directly or indirectly serving his master." (Citing cases.)

Great stress is laid by appellants on the case of *Barton* v. *Studebaker Corp. of America,* 46 Cal. App. 707 [189 Pac. 1025], where the judgment was reversed on the ground that the evidence showed the alleged employee to be an independent contractor. An examination of the facts in both cases indicates clearly that the case last cited can be readily distinguished from the case at bar in the following particulars:

(a) In the Barton case the salesman signed no contracts and closed no deals for the company. In this case Fairfield signed appellant corporation's name to contracts, including both preliminary and final contracts, with the full consent of the corporation, and, apparently, with full authority to bind the corporation.

(b) In the Barton case the salesman simply brought the purchaser in touch with the manager. But in this case Fairfield, himself, signed up any prospective purchaser which he was able to procure and collected money from him and gave the company's receipt, signing "Monroe, Lyon & Miller, Inc., by Fairfield".

(c) In the Barton case the salesman made no report to the company. In this case Fairfield filed written reports and could take no persons down to the tract without the approval of his superiors.

(d) In the Barton case the corporation had no control over the salesman. In this case the corporation exercised full control as to the methods to be employed by the salesmen, the route to be taken in transporting prospective purchasers to the property and the procedure to be followed with relation to the prospects taken to the tract, and, of particular significance, it had full power to discharge Fairfield at any time.

(e) In the Barton case the salesman was free to choose his own time for working and could seek prospects anywhere. In this case Fairfield had to report to the company's Sacramento office at 8 o'clock at least three mornings a week. Also was given only a restricted district, namely, the Sacramento territory.

(f) In the Barton case the only business of the salesman was to find and procure prospective purchasers and bring them to the company. In this case the business of Mr. Fairfield was to transport prospective purchasers to the Rio Del Mar tract, later to sell lots to them, and, if possible, actually sign up contracts with them, collect the money, and, in short, complete the sale, in all of which he fully represented the corporate appellant. In the case at bar the purchaser need never see nor deal with anyone else except the agent Fairfield in order to purchase a lot, pay for it and receive the final contract.

(g) In the Barton case the agent was under no obligation to give any particular time or service to the company. Nor was he in fact bound to handle the Studebaker car exclusively. In this case Fairfield was bound to give his full time and service to the selling of lots in the Rio Del Mar tract of the corporate appellant.

In view of these distinctions between the Barton case and the case at bar it is evident that the Barton case is not controlling. In several California cases, where the facts are practically identical with the case at bar, the Barton case has been discussed and has been distinguished. (*Briggs* v. *Jess Mead, Inc.,* 93 Cal. App. 666, 675 [270 Pac. 263]; *May* v. *Farrell,* 94 Cal. App. 703 [271 Pac. 789]; *Ryan* v. *Farrell,* 208 Cal. 200 [280 Pac. 945].)

In this connection the following language of the court in the case of *George* v. *Chaplin,* 99 Cal. App. 709 [279 Pac. 485, 487], is extremely pertinent: "Appellants, in support

of their contention, rely upon the case of *Barton* v. *Studebaker Corp., etc.,* 46 Cal. App. 707 [189 Pac. 1025]. There it was held that a salesman employed on commission, with no salary or fixed hours, and over whom the employer exercised no authoritative control, was an independent contractor, for whose negligence the defendant was not liable. In the present case, however, many circumstances are disclosed by the evidence which strongly tend to prove that the right was claimed and that such control was exercised by appellants to the extent at least that the character of the employment made reasonably possible. From the facts shown the inference was not unreasonable that, subject to the freedom of action inherent in the employment, it was understood that the right to direct the manner of performance was reserved by appellants. The question was properly submitted to the jury (*Majors* v. *Connor,* 162 Cal. 131 [121 Pac. 371]; *Buckley* v. *Harkens,* 114 Wash. 468 [195 Pac. 250]), and their conclusion is supported by the evidence.''

Defendant corporation earnestly insists that it cannot be held as the master of Fairfield, as there is no evidence of any contract of employment between said parties. The answer to this contention is that there is ample evidence in the record to support the finding that the corporation assumed control over the methods and means by which the work was to be done, and under such circumstances it will be held liable, irrespective of the existence of any contract of employment between it and Fairfield, and the mere fact of nominal employment by Moyle will not relieve it of liability. (39 C. J., p. 38.)

Viewing the evidence in its entirety, it would appear that the history of the relations of these parties would point to the conclusion that Fairfield acted at all times under the joint control and directions of both of these appellants, and it must follow that they are jointly liable for the injuries inflicted.

Appellants, at the conclusion of the case, moved the court to direct a verdict in their favor. From what we have said it clearly appears that there was substantial evidence in favor of plaintiff upon which the jury was justified in acting, and under such conditions the court properly denied the motion. (*Diamond* v. *Weyerhaeuser,* 178 Cal. 540 [174 Pac. 38].)

A number of other points are discussed in the briefs, but they are all elaborations of the main points which we have here discussed.

Suffice it to say that, after a careful examination of the entire record, we have come to the conclusion that none of these appellants should prevail.

The order granting new trial in respect to appellant Emerson is affirmed and the judgment against defendants Fairfield, Monroe, Lyon & Miller, Inc., and W. B. Moyle is affirmed.

Plummer, J., and Finch, P. J., concurred.